## Asher v. Simpson.

(Decided May 30, 1913.)

## Appeal from Bell Circuit Court.

1. Contracts—Ambiguity—Meaning That Should Be Given by Chancellor.—Where the parties to a contract, ambiguous in its terms, have put their own interpretation upon it by their action under it, a chancellor will not go into technical rules of construction in determining its meaning, but will give it that meaning which the parties themselves have put upon it.

2. Specific Performance—Action for—Laches—Evidence.—In an action to enforce specific performance of a contract to convey land, evidence examined and held that appellee was not guilty of such laches as to deprive him of the right to such relief.

T. L. EDELEN for appellant.

A. G. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Prior to the 7th of January, 1904, appellant was the owner of several tracts of land in Bell County, and appellee was the owner of a single tract in Leslie County.

Appellant is an extensive dealer in timber and timber lands, and on the 7th of January, 1904, he and appellee entered into the following written contract, to-wit:

"A. J. Asher and Isaac Simpson, agree as follows: (A. J. Asher of Bell County, Kentucky and Isaac Simpson of Leslie County, Kentucky), to exchange lands.

"Said Simpson agrees to convey all the lands he owns on Marrowbone and adjacent waters in Leslie County, Kentucky, by deed of general warranty to A. J. Asher, said land covered by a 140 acre survey made in the name of Isaac Simpson, No. 64075, surveyed October 29, 1890, and patented March 9, 1891, being the lands now occupied by Isaac Simpson; and for which lands A. J. Asher agrees to convey to said Simpson by deed of general warranty an equal number of acres lying on Kettle Island and waters of the right fork of Straight Creek in Bell County, Kentucky.

"Beginning at the mouth of said Kettle Island, thence up with the bed of said creek to about opposite or a little below the house where Henry Hubbard now lives, thence leaving said creek to include about one and one-half acres on the right as you go up, including the barn, thence back to the creek and up with the creek to near Sol

Baker's line, thence leaving the creek so as to include about one acre on the right side of said creek, thence back to the creek and Sol Baker's line, thence with said Baker's and Asher's line to Sam Brock's line, thence with said Brock's line to the top of the ridge between Right and Left Fork of Straight Creek, thence back with the mountain and said Asher's back line to A. W. Pickering's line, thence with same to the beginning.

"Said Asher reserves right of way for a railroad to be laid off through said land agreed to be conveyed, to be laid off the usual widths of rights of way laid off by railroad, and if a railroad should be built by said Asher or his assigns in the future through said land and said Asher or his assigns should need or require more land than said railroad right of way includes upon which to erect coke ovens, tipple or other mining structures, they reserve the right to take the same, but to pay said Simpson or his assigns the sum of one hundred ($100) dollars per acre for such land so taken outside of said right of way.

"Said Simpson agrees to stay where he now lives until the poplar timber is cut and removed from said tract of land and to pay no rent for same, and he agrees for a reasonable compensation (provided both parties can agree) to dictate and manage the getting out of said poplar timber.

"Said Simpson reserves the right to allow R. L. Lewis to get out said Lewis poplar timber.

"Said Asher has immediate possession of said Simpson lands for the purpose of getting out the timber therefrom but said Simpson is to hold possession otherwise as above specified.

"When said timber is removed said Asher is to have full possession of said land except in time of growing crops.

"Said Asher gives possession to said Simpson in thirty days.

"Said Simpson having sold eighteen poplar trees to E. L. Morgan said Asher stands good for same.

"Said Asher agrees to cut twenty-five hundred (2,500) feet of lumber for said Simpson free of charge.

"In case said Simpson has more acres in his above described tract than said Asher's described tract, said Simpson agrees to take the acreage on the S. W. corner of said Asher's land adjacent the Sam Brock tract and back of same or west of same."

As appears from the face of the contract, appellant wanted the Simpson lands especially for the timber, and immediately after the execution of the contract, through his agents, proceeded to take the merchantable timber from the Simpson tract, Simpson remaining thereon and superintending the getting out of the timber for Asher. About a year later Simpson moved to the Kettle Island tract of land in Bell County referred to in the contract and took possession of it.

A year or two after the contract, one George V. Turner instituted an action in the Federal Court against Asher and Simpson claiming to be the owner of the tract of land under an old patent, but before the case came to trial Simpson paid Turner five hundred dollars ($500) for a quit claim deed to his interest in the Simpson tract, and this deed of course, enured to the benefit of, and was intended to perfect the title both of Asher and Simpson.

Upon one pretext or another, Asher persistently refused to make the conveyance provided for in the contract, saying at one time that his wife was in California and that he could not therefore make the conveyance, and at other times that he was dissatisfied with the survey of the Leslie County lands, and wanted them re-surveyed.

This action was instituted on the 19th of January, 1911, by appellee alleging that the Leslie County tract of land owned by him, and embraced in the contract above quoted, contained 357 88-100 acres, and that the Kettle Island tract of land owned by appellant, referred to therein, contained 281 7-10 acres of land; and further, that since the execution of the contract of the 7th of January, 1904, appellant had sold the tract of land refered to in the said contract as adjacent to the Sam Brock tract, and out of which it was agreed that appellee was to have this deficit of 76 18-100 acres, and had received therefor thirty five ($35) dollars per acre; and prayed for a specific performance of the contract as to the Kettle Island tract, and for a judgment against appellant for the amount he received for the 76 18-100 acres so sold by him off of the tract adjacent to the Sam Brock tract.

Appellee tendered with his petition a deed in due form executed by him and his wife to Asher for the Leslie County lands.

The court adjudged a specific performance as to the Kettle Island lands, and entered a judgment for appelle for $2,666.30 with interest from the date of the fil-

ing of the suit as representing the 76 18-100 acres, the land which appellant agreed to convey to appellee, and which he sold at the price of $35 per acre.

Appellant seeks a reversal upon two grounds: (1). That the description in the contract of the Simpson lands as "all the lands he owns on Marrowbone and adjacent waters in Leslie County, Kentucky  *  *  *  said land covered by a 140 acre survey made in the name of Isaac Simpson, No. 64075, surveyed October 29th, 1890 and patented March 9, 1891, being the lands now occupied by Isaac Simpson" only embraces the land owned by Simpson within the 140 acre survey, and that he (appellant) cannot be required to take under the terms of the contract any land outside of that patent.

(2.) That the appellee has been guilty of such laches and delay as that the situation of the parties has changed, and he is therefore not entitled in equity to a specific performance.

Where the parties to a contract, ambiguous in its terms, have put their own interpretation upon it by their action under it, a chancellor will not go into the technical rules of construction in determining its meaning, but will give it that meaning which the parties themselves have put upon it. In this case immediately after the execution of the contract, Asher proceeded to take the merchantable timber from the whole Simpson tract, not confining himself to that part of it embraced within the 140 acre patent. This action of his immediately after the execution of the contract, and which was acquiesced in, and actually participated in by the appellee as Asher's employee, is most conclusive that the parties themselves understood at the time that Simpson was selling and Asher was buying the whole of the Simpson tract.

The evidence is that appellee himself had lived upon that same tract of land for thirty-five years, had raised his whole family there; that his, and his wife's ancestors had lived upon it for years prior to that, and that his possessory title to the whole tract was good, and that there is now no other known claimant to any part of it.

To now permit the appellant after receiving the full benefit of what he chiefly contracted for (the merchantable timber on the Simpson tract) to deny to appellee that which he contracted for, (the same number of acres of land in Bell County, or its equivalent) would be to work out a result abhorrent to equitable principles. The

parties entered into this contract with their eyes open, they were on the ground when it was made, the lines were pointed out the very day it was executed, they have by their own acts under it immediately after its execution plainly pointed out what was in their minds when they made it, and the courts will not interfere with that interpretation.

No time was fixed in the contract for its performance by either party, and time was therefore not of the essence of the contract. The evidence is that Asher agreed orally to have both tracts surveyed, and that he did have the Simpson tract surveyed, but subsequently said that he was dissatisfied with that survey, and actually had it resurveyed after this suit was instituted.

The Federal Court suit necessarily caused some delay in the carrying out of this contract; the absence of Asher's wife in California another time was pleaded by him as cause for further delay, and it appears throughout the record that he was dilatory in carrying out his agreement to have these two tracts of land surveyed.

Under these circumstances there was no such laches as deprived appellee of the right to a specific performance.

The judgment does substantial justice between the parties and is affirmed.